| | |
|---|---|
| BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-100, et al., <br><br> Defendants. | No. 2:19-cv-01274-KJM-CKD <br><br><br> ORDER |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Having obtained a temporary restraining order, plaintiff moves now for a preliminary injunction and seizure order to enjoin unnamed defendants from selling counterfeit merchandise at Shawn Mendes concerts during the artist's ongoing 2019 tour. Plaintiff's motion is based on Federal Rule of Civil Procedure 65, the Lanham Act (15 U.S.C. § 1051 *et. seq.*), the All Writs Act (28 U.S.C. § 1651) and Civil Local Rule 231, Mot. for TRO, ECF No. 3 at 1, as well as the declarations of Emily Holt, ECF Nos. 5, 13, Officer John Carruthers, ECF No. 12, and counsel Cara Burns, ECF No. 6. For the reasons below, the court DENIES plaintiff's request.

I. BACKGROUND

The court previously granted Plaintiff's Ex Parte Application for a Temporary Restraining Order (TRO) and Seizure Order, and issued an Order to Show Cause Why a Preliminary Injunction should not Issue, modifying the proposed order provided by plaintiff.

1

1 ECF Nos. 9 ("TRO"), 10 ("Order").  The TRO restrained bootleggers from selling merchandise
2 bearing marks that infringe upon registered trademarks owned by the performing artist Shawn
3 Mendes ("the Artist"), which marks Mendes has licensed exclusively to plaintiff.  *See* Order at 1;
4 Mem. in Support of TRO, ECF No. 4, at 8 ("Plaintiff is the exclusive licensee of the Artist.").
5 The TRO was scheduled to expire after hearing on the motion for preliminary injunction on July
6 25, 2019.  TRO at 2; *see also* Fed. R. Civ. P. 65(b)(2).

7 In explaining its reasoning for granting a limited TRO, the court identified two
8 issues giving the court pause: (1) plaintiff's naming of only Doe defendants, a disfavored practice
9 in federal court, and (2) plaintiff's request for a TRO that allowed off-duty officers, among
10 others, to conduct seizures of counterfeit merchandise.  *See* Order at 2.  The court granted the
11 TRO, given the impending concert in Sacramento and the understanding that the thin record was
12 a product of the tour's nascency and would be supplemented in the following two weeks as the
13 tour progressed.  *See* TRO at 3; Order at 3 ("[G]iven the transitory nature of the bootlegging here,
14 . . . the court recognizes the difficulty of identifying the bootleggers by name before a concert
15 commences."); Burns Cert., ECF No. 6, ¶ 15 ("Plaintiff expects to provide the Court with
16 declarations indicating that service of the order . . . has been made identifying bootlegging
17 defendants (whose names *will be provided*) and others acting in active concert and participation
18 with those defendants." (emphasis added)).

19 Twelve days after the court issued its TRO, and two days before the TRO's
20 expiration date, plaintiff filed a memorandum in support of a preliminary injunction and ongoing
21 seizure order, ECF No. 11, a supplemental declaration of plaintiff's Director of Business and
22 Legal Affairs, Emily Holt, Holt Decl. II, ECF No. 13, and a declaration by Officer John
23 Carruthers, a Washington, D.C. police officer experienced in carrying out civil orders targeting
24 anti-counterfeit merchandise, Carruthers Decl., ECF No. 12.  These supplemental filings are
25 aimed primarily at addressing the court's concern with empowering off-duty officers, as opposed
26 to on-duty officers, to seize counterfeit goods.  *See generally* Supp. Mem., ECF No. 11; *see*
27 Carruthers Decl. ¶¶ 3–6; Holt Decl. ¶¶ 3–4.  Officer Carruthers' declaration also describes
28 plaintiff's efforts to identify and serve bootleggers at the Artist's Sacramento and Oakland

concerts, and includes photographs of several alleged bootleggers selling infringing merchandise as well as proofs of service on some bootleggers appearing outside the Oakland concerts held on July 13 and July 14, 2019. Carruthers Decl. ¶ 6, Exs. A (photographs) & B (proofs of service). The proofs of service provide descriptions of the persons served, but no real names or addresses. Other than by providing additional photographs and these proofs of service, the supplemental filings do not address the court's other legal concerns, namely plaintiff's use of Doe defendants, whether the case meets the threshold case or controversy requirement, and the broad reach of the requested injunction. *See* Order at 2.

The court held the preliminary injunction hearing on July 25, 2019, with the court appearing telephonically; Ms. Burns appeared as counsel for plaintiff, but no defendants appeared. The court submitted the motion and issued its decision denying plaintiff's request in a minute order. ECF No. 15. This order provides the court's reasons for the denial.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). This four-factor test applies to trademark infringement actions under the Lanham Act. *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).

A plaintiff seeking an injunction must meet a "heavy burden" of proving it is entitled to such an "'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council,* 555 U.S. 7 (2008)).

## III. DISCUSSION

Based on the record presented here, the court finds plaintiff has not met its burden of showing the threshold "case or controversy" requirement is met. Furthermore, upon further review of the law since issuing the TRO, the court concludes plaintiff incorrectly conflates the

requirements for an injunction, under Federal Rule of Civil Procedure 65 and 15 U.S.C. § 1116(a), and the requirements for a seizure order, under 15 U.S.C. § 1116(d). *See In re Lorillard Tobacco Co.*, 370 F.3d 982, 985 (9th Cir. 2004) (seizure order under § 1116(d) is separate and distinct remedy from an injunction § 1116(a)). Plaintiff has not met its burden of showing the requirements for either, as laid out below.

A. <u>Case or Controversy Requirement</u>

Plaintiff asks the court to extend the TRO and issue a preliminary injunction against "Does," a nationwide, unidentified group of individuals, each one of whom is not now or at some point in the future licensed to make commercial use of the Artist's marks. *See generally* Mot. for TRO; Mem. in Support of TRO. As noted above, the court previously expressed its concerns that plaintiff names only Doe defendants, generally disfavored in federal court, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored." (citation omitted)), in part because the practice raises questions regarding whether the threshold case or controversy requirement is met, *Live Nation Merch., Inc. v. Does*, No. CV 15-3762-GHK (EX), 2015 WL 12672733, at *1–2 (C.D. Cal. May 21, 2015). *See also Plant v. Doe*, 19 F. Supp. 2d 1316, 1320 (S.D. Fla. 1998) ("The use of a fictitious name is not generally permitted as a tool by which a private plaintiff may obtain a broad-based order preventing any and all members of society from engaging in future behavior that might or might not later be found to have violated the plaintiff's rights.").

Though the court granted the TRO on the sparse record available at the time, the supplemented record before the court now falls short of providing additional information necessary to sufficiently identify any of the alleged bootleggers, despite the court's TRO affording plaintiff the time to gather such information. In the TRO application, plaintiff's counsel represented that, in conjunction with a preliminary injunction request, plaintiff would provide the court "with declarations indicating that service of the order . . . has been made identifying bootlegging defendants (whose names will be provided)" and plaintiff would "thereupon amend the caption of these proceedings to name all identified defendants served with process." Burns Decl. ¶ 15. Yet, only a few actual persons are now identified by photographs or by obviously

4

false names they provided when those persons were served with the TRO. *See* Carruthers Decl., Ex. A; *id.* Ex. B at 5 (Service of Process and Receipt for Goods Seized identifying Doe defendant as "photo taken refused I.D. / Ran from Bart platform"); *id.* Ex. B at 8 (identifying recipient as "'Lenny'"). Plaintiff claims at least some of the same persons travel from venue to venue, such that photographs of persons who sold allegedly counterfeit merchandise at a prior concert will serve to identify the same individuals against whom an injunction would apply going forward. *See* Holt Decl. ¶ 13. At this stage, however, after several concerts, plaintiff has not identified a single defendant, even by photograph alone, who has appeared at more than one concert venue; the photographs provided appear to identify different persons outside concerts in Southern California and concerts in Oakland. *Compare* Holt Decl., Ex. D, ECF No. 5-4 (photographs from July 6, 2019 concert at Staples Center in Los Angeles, California; July 8, 2019 concert at the Pechenga Arena in San Diego, California; and July 9, 2019 concert at the Gila River Arena in Glendale, Arizona), *with* Carruthers Decl., Ex. A, ECF No. 12-1 (photos from July 13 and July 14, 2019 concerts in Oakland[1]). Neither has plaintiff matched up a photograph of any Doe defendant with a proof of service; it provides only two disconnected batches of photographs and proofs. *See* Carruthers Decl. Exs. A (photographs), B (proofs of service). Instead, plaintiff relies on the fact that the same infringing merchandise is sold at each venue to speculate that the same persons appear at each venue to sell this merchandise. *See* Holt Decl. ¶ 13 ("In virtually every instance, the Defendants sell identical shirts, indicating that they are supplied from a common source. Individual Bootleggers are recognized from venue to venue as they follow the tours, or they arrange to have local individuals sell the Infringing Merchandise for them."); Carruthers Decl. ¶ 7 ("As has been my experience with past tours, it is expected that these Defendant Bootleggers will travel to each of the upcoming performances of the Artist."). While the court accepts that plaintiff's declarants have experience and knowledge regarding the practices of bootleggers during concert tours generally, and even while there is some persuasive value to

---

[1] It is not clear from the Carruthers Declaration if the photographs in Exhibit A were all taken in Oakland or if some were taken at the July 11, 2019 concert in Sacramento. Regardless, plaintiff does not identify any individuals who have appeared at more than one concert venue.

5

plaintiff's theory, at this stage of the proceedings more is needed to ground plaintiff's theory in viable evidence in order for an injunction to issue. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 22 ("[I]njunctive relief . . . may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." (emphasis added) (citation omitted)); *see also Plant v. Doe*, 19 F. Supp. 2d at 1320.

Plaintiff has not sufficiently identified even one actual defendant who has violated plaintiff's rights more than once and is likely to continue to do so. Nor has plaintiff provided documentation that allows the court to conclude even one defendant captured in a photograph has been served, given that the photographs and proofs of service are not linked up. Plaintiff thus has not shown there is an actual case or controversy to be adjudicated. *See Live Nation Merch., Inc. v. Does*, 2015 WL 12672733, at *1 ("Because the complaint does not allege that any particular Defendant has acted to infringe upon Plaintiff's rights, we conclude that there is no justiciable case and controversy at this time."); *Rock Tours, Ltd. v. Does*, 507 F. Supp. 63, 66 (N.D. Ala. 1981) (finding, under similar circumstances, "this Court doubts '. . . the existence of a sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments, which in our adversary system is available only from the parties'" (alteration in original) (citation omitted); *cf. Live Nation Merch., Inc. v. Does*, No. 18CV2703-GPB(JLB), 2018 WL 6326321, at *3–4 (S.D. Cal. Dec. 4, 2018) (denying TRO because plaintiff could not identify defendant bootleggers and therefore could not show "actual or imminent" injury and lacked standing).

B.  Injunction

Even if plaintiff had succeeded in satisfying the threshold requirement of presenting a case or controversy, it has not met its burden on the first and second prongs of the preliminary injunction test: likelihood of success on the merits of the underlying claim and likelihood of irreparable harm in the absence of preliminary relief, as explained below. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 22. Furthermore, plaintiff has not shown how the injunction can bind the unserved Doe defendants, given applicable notice requirements.

/////

/////

1. Likelihood of Success on Merits

Plaintiff's complaint asserts claims for injunctive and monetary relief based on unidentified defendants' alleged trademark infringement, violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, violation of California Civil Code section 3344(a), and violation of the right to privacy. Compl., ECF No. 1 at 1. For the court to grant a preliminary injunction, plaintiff must show likelihood of success on the merits of at least one of these claims. *See Lilith Games (Shanghai) Co. v. UCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 5591612, at *3 (N.D. Cal. Sept. 23, 2015). For example, with respect to its first claim for violation of the Lanham Act under 15 U.S.C. § 1125(a), plaintiff would need to show a likelihood it could meet the elements of a trademark infringement claim: "(1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (holding district court abused its discretion in granting preliminary injunction on trademark claim without adequately analyzing "the relevant law in evaluating [plaintiff's] likelihood of success"). At hearing, when pressed, plaintiff's counsel argued that the preliminary injunction request is based on all its claims made in the complaint, and referred back to its papers in support of the temporary restraining order.

In its briefing, plaintiff provides only a cursory explanation as to its substantial likelihood of success on the merits of its claims, omitting any reference to the relevant law or elements of those claims. *See* Mem. in Support of TRO, at 8 ("Plaintiff easily meets the required showing and there is no defense to the claims brought by Plaintiff. Plaintiff is the exclusive licensee of the Artist, and the sole merchandiser for authorized merchandise which will be sold during their tour. Holt Decl. ¶ 2. Plaintiff has therefore demonstrated a substantial likelihood that it will succeed on the merits.").

Even accepting that the sale of unauthorized merchandise on the Artist's concert tour would infringe on plaintiff's rights, fundamentally, based on the record described above, plaintiff cannot establish likely success on the necessary elements of a trademark claim, or any claim, because plaintiff has not sufficiently identified any individual as infringer against whom

the suit is brought.[2] *See Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1157 (W.D. Wash. 2011) ("A plaintiff alleging trademark infringement must show that the *alleged infringer* (1) used in commerce (2) a word, false designation of origin, false or misleading description, or representation of fact, . . ." (emphasis added) (internal quotation marks and citation omitted)). Because plaintiff has not met its burden to show the first prong of the preliminary injunction test is satisfied, the request must be denied.

         2.         <u>Likelihood of Irreparable Harm</u>

To obtain a preliminary injunction in a trademark infringement case, a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d at 1249 (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 22). Injury is generally not considered irreparable if it can be remedied by money damages. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). To meet its burden, plaintiff cannot rely on a "cursory and conclusory" analysis; rather, plaintiff must make a showing "grounded in [] evidence" such that the court can make factual findings to support a likelihood of irreparable harm. *Herb Reed Enterprises, LLC*, 736 F.3d at 1250.

Plaintiff argues it will suffer irreparable harm in the form of "the loss and damage to the goodwill of Plaintiff and the Artist through the distribution of inferior merchandise which will necessarily be seen as associated with them caus[ing] additional irreparable harm in that it cannot be calculated or remedied." Mem. in Support of TRO at 8 (citing Holt Decl. ¶¶ 7–21; Burns Cert. ¶¶ 6–20). In support of this argument, plaintiff offers the declaration of Emily Holt, who explains that, when plaintiff's agents purchased counterfeit merchandise sold at several of

---

[2] While the district court in *World Wrestling Entmt., Inc. v. Various John Does*, No. CIV.A. 14-688, 2014 WL 1330037, at *1–2 (E.D. La. Apr. 1, 2014), raised similar concerns in denying plaintiff's TRO in that case, that court was reversed by the Fifth Circuit. *Id. vacated sub nom. World Wrestling Entm't, Inc. v. Unidentified Parties*, 770 F.3d 1143 (5th Cir. 2014). However, both courts only analyzed the burden for a TRO, at which stage a plaintiff's ability to present a complete record may be hindered by a short time frame between filing and the onset of the activity plaintiff seeks to restrain. The Ninth Circuit appears not to have addressed the use of Doe defendants in the bootlegging context underlying plaintiff's complaint here.

the Artist's concerts in Southern California, they discovered the "Infringing Merchandise . . . had split hang tags, removed tags, or were marked 'IR' or 'IRR' for irregular or other marking such as a line through the label or red tape. That means they are 'seconds'; merchandise being of inferior quality and usually purchased for pennies on the dollar." Holt Decl. ¶ 11. She gives several reasons why this might harm consumers and artists generally, but as to plaintiff's non-economic harm, she states only in conclusory fashion that the bootlegging activity "tarnishes the Plaintiff's . . . reputation[] for excellence and integrity in the legitimate Authorized Tour Merchandise." *Id.* ¶ 19. Counsel's Rule 65 certification merely summarizes the same argument. *See* Burns Cert. ¶ 10.

These declarations are insufficient, given the Ninth Circuit's requirement of evidentiary support for a finding of likely irreparable harm. *See Herb Reed Enterprises, LLC*, 736 F.3d at 1250. Plaintiff has not provided evidence connecting the inferior quality of the goods to the reputational harm it will allegedly suffer absent injunctive relief, and the court cannot presume plaintiff will suffer irreparable harm simply because the trademarks it has licensed are infringed upon. *Id.* at 1250–51 (reversing preliminary injunction grant where district court's irreparable harm finding was "inadequate" because it was "grounded in platitudes rather than evidence," and strongest evidence in the record, "an email from a potential customer" showing customer confusion, was insufficient).

Without more, plaintiff has not met its burden to show a likelihood of irreparable harm, and therefore the preliminary injunction request must be denied.

         3.      <u>Rule 65 Notice Requirement</u>

Additionally, as noted, plaintiff's motion for a preliminary injunction is based on Federal Rule of Civil Procedure 65 as well as the Lanham Act, 15 U.S.C. § 1116(a). Rule 65, governing the granting of injunctions, provides that an injunction binds only those who "receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2). At the preliminary injunction hearing, plaintiff argued that the bootleggers can be bound by an injunction, despite not having actual notice, because they are in "active concert and participation with" the few individuals who were served with the TRO. *See* Rule 65(d)(2)(C). Even if that were true, and

9

assuming this subsection can be read to mean those in active concert and participation do not need actual advance notice to be bound, the court cannot conclude from the record before it that any identifiable person has received notice of the proceedings here, so as to be susceptible to substitution in place of a Doe defendant. *See N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977) ("Those not identified with a party, but in active concert or participation with him, are bound only with actual notice.")[3]; *cf. United States v. Baker*, 641 F.2d 1311, 1314–15 (9th Cir. 1981) (holding non-parties in privity with parties are bound by injunction but "must have actual notice of it before they can be held in criminal contempt"). If plaintiff had identified even one repeat bootlegger appearing at more than one concert, or provided clear proof of service of even one person identified by photograph alone, it might have established a sufficient, if slim, record to meet the Rule's notice requirements. But it has not.

        The Lanham Act also authorizes a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). The procedural requirements of Rule 65 apply to an injunction issued under § 1116(a). *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1128 (9th Cir. 2006) ("We conclude that the TRO [issued under § 1116(d)] was improvidently issued because it failed to comport with

---

[3] The court notes Rule 65 was worded slightly differently at the time *N.L.R.B.* was decided, but the subsequent amendments do not affect the proposition for which the rule is cited here. *See N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d at 633 ("Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise" (quoting Fed. R. Civ. P. 65(d) (1966)). *See* Fed. R. Civ. P. advisory committee's note to 2007 amendment ("Rule 65(d)(2) clarifies two ambiguities in former Rule 65(d). The former rule was adapted from former 28 U.S.C. § 363, but omitted a comma that made clear the common doctrine that a party must have actual notice of an injunction in order to be bound by it. Amended Rule 65(d) restores the meaning of the earlier statute, and also makes clear the proposition that an injunction can be enforced against a person who acts in concert with a party's officer, agent, servant, employee, or attorney.").

the notice and specificity provisions of Federal Rule of Civil Procedure 65."); *Wangson Biotechnology Grp., Inc. v. Tan Tan Trading Co.*, No. C 08-04212 SBA, 2008 WL 4239155, at *3 (N.D. Cal. Sept. 11, 2008) ("Section 1116(a) *authorizes* injunctions to enforce claims brought under the Lanham Act of 1946, 15 U.S.C. § 1051 *et seq.*, including under § 1114(1) or § 1125(a), but Rule 65(b) governs the *process*." (emphasis in original)); *but see Fishing Hot Spots, Inc. v. Simon & Schuster*, 720 F. Supp. 746, 748 (E.D. Wis. 1989) ("The court can find no case law in support of the notion that Congress intended that in a trademark case Rule 65 should operate to limit that grant of authority contained in § 1116(a)."). Thus, the fact that plaintiff also requests an injunction under the Lanham Act does not exempt it from Rule 65's notice requirement.

Moreover, the text of § 1116(a) also requires, implicitly at least, notice to defendants before an injunction can issue and be enforced. 15 U.S.C. § 1116(a) ("Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted . . . ."). The local rule governing the issuance of injunctions, also cited by plaintiff, similarly requires notice before the court can issue a preliminary injunction. *See* E.D. Cal. R. 231 (regarding notice for a preliminary injunction, referring to the local rules for noticing a civil motion including E.D. Cal. R. 230[4]).

Therefore, neither Rule 65 nor the Lanham Act empower the court to issue a preliminary injunction here, where the court cannot conclude that even one identifiable defendant—even if identified only by virtue of a photograph to provide a basis for later more detailed identification—has been served. While this is a gap that plaintiff might have filled with a better record, it is not the court's job to fill the gap.

/////

/////

---

[4] "Notice, Motion, Brief and Evidence. Except as otherwise provided in these Rules or as ordered or allowed by the Court, all motions shall be noticed on the motion calendar of the assigned Judge or Magistrate Judge. The moving party shall file a notice of motion, motion, accompanying briefs, affidavits, if appropriate, and copies of all documentary evidence that the moving party intends to submit in support of the motion. . . ." E.D. Cal. R. 230.

11

C. <u>Ex Parte Seizure Order</u>

With the additional time allowed for consideration of plaintiff's preliminary injunction request, the court now realizes the Ninth Circuit has made clear in *In re Lorillard Tobacco Co.* that the ex parte seizure order authorized by the Lanham Act, 15 U.S.C. § 1116(d), is an entirely different remedy from the injunction authorized elsewhere in the Lanham Act, 15 U.S.C. § 1116(a), and by Rule 65. *In re Lorillard Tobacco Co.*, 370 F.3d at 984–97. The ex parte seizure order authorized by § 1116(d) is "an extraordinary mechanism for pre-notice seizure of allegedly infringing goods," the purpose of which is "to ensure that certain evidence makes it to trial." *In re Lorillard Tobacco Co.*, 370 F.3d at 989. The Lanham Act is the "exclusive source of authority for counterfeit seizure orders," McCarthy on Trademarks and Unfair Competition § 30:38 (5th ed. 2019); *see Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065, 1071 (C.D. Cal. 1994) ("The Lanham Act is the exclusive vehicle for counterfeit seizures.").

The Lanham Act sets out "specific standards" for the issuance of such an order. *Id.* Most notably, the court must find "it clearly appears from the specific facts that":

> (i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;
>
> (ii) the applicant has not publicized the requested seizure;
>
> (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
>
> (iv) an immediate and irreparable injury will occur if such seizure is not ordered;
>
> (v) the matter to be seized will be located at the place identified in the application;
>
> (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

/////

/////

> (vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4); *see also United States v. Shayota*, 186 F. Supp. 3d 1052, 1056 (N.D. Cal. 2016). Any seizure order under this section "shall end no later than seven days after the date on which such order is issued," *id.* § 1116(d)(5)(C).

Plaintiff has not met the requirements for a seizure order on this record, nor did it, in retrospect, in its initial application for a TRO and ex parte seizure order. In particular, plaintiff has not provided sufficient evidence to show that "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." *Id.* § 1116(d)(4)(vii). At best, the record on this issue is thin. Plaintiff does submit a Rule 65(d) "certification" from counsel, which states:

> Based upon my knowledge of these past actions, I know that it is far more likely than not that the Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an ex parte search, seizure and impoundment order. From my familiarity with such trademark and unfair competition actions, it has been my observation that hiding or destroying evidence and business records is usually the first action taken by a Bootlegger after the Bootlegger learns that litigation has been commenced by a trademark or similar property owner.

Burns Cert., ECF No. 6, ¶ 8. This conclusory language proves nothing more than counsel's impressions based on "knowledge of these past actions." Similarly, plaintiff offers the declaration of Emily Holt, which states, "Based on my experience with such Defendants, I believe these Defendants would dispose of or destroy any Infringing Merchandise or related documents should legal proceedings be commenced against them." Holt Dec. ¶ 21. The declarant provides only conclusions as to what future, unidentified bootleggers are likely to do based on her experiences with other bootleggers in the past. Finally, plaintiff's declaration from Officer Carruthers states, "Defendant Bootleggers . . . for the most part just drop their shirts and/or walk away when we are trying to serve them, or they run away when they see us approach them with

13

1 documents to serve. They . . . sometimes even hide their infringing merchandise nearby to get
2 more shirts etc." Carruthers Decl. ¶ 4. These statements do not support the conclusion that, if
3 notice were provided to them, defendants would "destroy, move, hide, or otherwise make [the
4 evidence of counterfeit merchandise] inaccessible to the court." 15 U.S.C. § 1116(d)(4)(vii). In
5 fact, Officer Carruthers' statements suggest the opposite, that the bootleggers "drop their shirts
6 and/or walk away," willingly abandoning the evidence of counterfeiting, not destroying it.
7 Carruthers Decl. ¶ 4.

Taken together, the statements in these three declarations are insufficient for the court to find that "it clearly appears from specific facts" that the requirements of § 1116(d) are met. 15 U.S.C. § 1116(d)(4)(b); *see also Wangson Biotechnology Grp., Inc.*, 2008 WL 4239155, at *5 (finding same, despite "five declarations and almost a half-inch of exhibits," because "the mere allegation a defendant is engaged in criminal counterfeiting, and thus has an *incentive* to destroy evidence, without more, is insufficient to support granting an ex parte request for a seizure order" (emphasis in original)); *Esquire Properties Trading, Inc. v. Starmax Enterprises, Inc.*, No. CV1409379MMMAJWX, 2014 WL 12479298, at *11 (C.D. Cal. Dec. 8, 2014) (denying seizure order request because "[p]laintiff only offers conclusory statements about the general propensity of counterfeiters to destroy or hide evidence"). This conclusion is further bolstered by the fact that, where other courts have issued reasoned decisions granting ex parte seizure orders, the defendants have generally been identified by name. *See, e.g.*, *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (EX), 2015 WL 6680807, at *1 (C.D. Cal. Oct. 19, 2015); *but see World Wrestling Entm't, Inc. v. Does*, No. 15-CV-01263-VC, 2015 WL 9690312 (N.D. Cal. Mar. 24, 2015) (granting ex parte seizure order with modifications).

As the court previously has observed, the statute also dictates that the seizure order could only authorize on duty law enforcement officials to seize counterfeit merchandise, not off duty officers, as argued by plaintiff. *See* Supp. Mem. at 2–3 ("The Trademark Act does not make any distinction between on-duty and off-duty law enforcement officers, so therefore it does not preclude the Court from authorizing off-duty law enforcement officers to serve the Proposed PI &

14

Seizure Order and to seize the Infringing Merchandise."). The court is not persuaded by plaintiff's arguments, which invite a departure from the provisions Congress has made. The court thus joins those courts who also have declined to authorize the use of off duty officers for seizure of infringing items under the Lanham Act. *See World Wrestling Entm't, Inc. v. Does*, 2015 WL 9690312, at *2 (rejecting plaintiff's argument that off duty law enforcement officials should be authorized by seizure order); *cf. Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125–26 (2d Cir. 1989) (explaining this statute, as well as the Supreme Court rules on writs of seizure, requires seizures be made by a law enforcement officer in part because "an attempt by a private person to make a search and seizure will be met with resistance from the person whose privacy is being invaded" and, when an officer executes a seizure order, "many Fourth and Fifth Amendment problems may be avoided"); *Time Warner Entm't Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 412 (E.D.N.Y. 1994) (rejecting plaintiff's proposal to have a private investigator conduct seizure and impoundment, in part because "the 1984 amendments to the Lanham Act explicitly provide that seizures must be effected by "a United States Marshal or other law enforcement officer"); *but see SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *1 (granting seizure order authorizing on or off duty law enforcement officers to enforce it, without discussing issue).

Furthermore, even if plaintiff did successfully show the requirements of § 1116(d) were met here, the ex parte seizure order requested would be limited to seven days, 15 U.S.C. § 1116(d)(5)(C), a fraction of the duration requested by plaintiff. *See* Holt Decl., Ex. A (Tour Dates), ECF No. 5-1 (showing Shawn Mendes concert dates scheduled until at least August 31, 2019).

On this record, plaintiff has not met its burden as required for the issuance of an ex parte seizure order under § 1116(d).

IV. CONCLUSION

The court recognizes the challenging circumstances plaintiff faces given the bootlegging of infringing merchandise taking place in connection with the Artist's current tour. And the court does not mean to suggest that plaintiff does not have the right to enforce its rights

in the licensed trademarks identified in the complaint, within the framework provided by the law. While it appears to this court that plaintiff, with greater diligence, might obtain something closer to the relief it seeks for the duration of a full tour, it may also be that plaintiff needs to proceed on a concert-by-concert or state-by-state basis, particularly given the strictures of the Lanham Act's seizure provisions. It may also be that the Lanham Act does not currently provide the remedy to fully address plaintiff's predicament. But if that is the case, it is the purview of Congress and not of this court to fashion an appropriate solution. Notwithstanding plaintiff's suggestion to the contrary, and the significant number of courts that have been otherwise persuaded, this court does not believe its powers of equity are so unconstrained as would be required to grant plaintiff the relief it requests.

For the reasons described above, the Temporary Restraining Order, Seizure Order and the Order to Show Cause Why a Preliminary Injunction and Seizure Order should not Issue, ECF No. 9, is hereby DISSOLVED, and the request for a preliminary injunction, ECF No. 11, is DENIED. In compliance with 15 U.S.C. § 1116(d)(7), given that some merchandise has been seized by law enforcement officers under the court's prior order, plaintiff SHALL make arrangements for those law enforcement officers to deliver all merchandise seized by authorization of the seizure order, ECF No. 9, to the court in the next 21 days. *See* 15 U.S.C. § 1116(d)(7) ("Any materials seized under this subsection shall be taken into the custody of the court.").

IT IS SO ORDERED.

DATED: July 29, 2019.

_____
UNITED STATES DISTRICT JUDGE